IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| UNITED STATES OF AMERICA, | § | |
|---|---|---|
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-05-4 (1) |
| | § | C.A. No. C-05-356 |
| PEDRO FLORES-QUIRINO, | § | |
| | § | |
| Defendant/Movant. | § | |

**ORDER DENYING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE
AND DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Pedro Flores-Quirino's ("Flores") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (D.E. 47),[1] which was received by the Clerk on July 18, 2005. The Court ordered the government to respond, and, after seeking and receiving an extension to file, the government filed its response and motion for summary judgment, or, in the alternative, for dismissal of Flores' motion. (D.E. 59). On January 23, 2006, the Clerk received from Flores a reply,[2] which the Court has also considered.

As discussed in detail herein, all of Flores' claims, except those challenging the validity of his plea agreement, are subject to dismissal because he waived his right to file those claims. His other claims, which fall outside the scope of his waiver, fail on their merits. For these reasons, the Court DENIES his § 2255 motion. Additionally, the Court DENIES Flores a Certificate of Appealability ("COA").

---

[1] Dockets entries refer to the criminal case, C-05-cr-4.

[2] Flores has titled his reply as a "traverse" to the government's response.

1

## I.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

## II.  FACTS AND PROCEEDINGS

**A.**     **Summary of Offense[3]**

On January 4, 2005, Flores was driving a Dodge Status northbound on Farm to Market Road 1329, and Border Patrol agents assigned to observation duties in the area noted that the vehicle appeared to be heavily laden and bouncing excessively.  Because the area where the vehicle was traveling was known for alien and drug smuggling, the agents decided to initiate a vehicle stop for an immigration inspection of the occupants.  The Dodge Stratus initially pulled over, but then sped off as the agent approached the rear area of the vehicle.

Border Patrol agents pursued from a safe distance and estimated that the defendant was driving approximately 90 miles per hour in a 65 mile per hour zone.  The defendant later collided with a tree, causing heavy vehicle damage.  Agents searched the area for people and located five undocumented aliens.  Four of these individuals were transported to local hospitals to be treated for injuries.

The next day, Flores provided a handwritten statement to Border Patrol agents that said he had come to the country illegally.  He had been in Houston for eight days and that family members were unable to pay his transporters $1,500 for his passage.  He was told that he had to drive a car, and when he arrived at a location, people were getting into the car.  He said that when he was followed by the patrol unit, he became nervous and afraid and that when he intended to stop, he lost control of the vehicle and that is why he had the collision.

---

[3] The offense conduct as set forth herein is derived from Paragraphs 4-8 and 54-56 of the Presentence Investigation Report ("PSR").

One of the material witnesses said during his interviews that Flores had instructed him and others to get in the trunk of the vehicle. Another said that he had been instructed to get into the trunk, and had been in the trunk, but did not identify Flores as the one giving instructions. Several told investigators that they thought they were going to die during the transport.

**B.      Criminal Proceedings**

On January 12, 2005, Flores was charged in a two-count indictment with two counts of transporting undocumented aliens within the United States, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and 1324 (a)(!)(B)(ii). (D.E. 18). On February 28, 2005, he pleaded guilty pursuant to a written plea agreement with the government. (D.E. 34, 35). In exchange for his guilty plea to count one and his waiver of appellate and § 2255 rights (discussed below), the government agreed to recommend that he receive the maximum credit for acceptance of responsibility, to recommend a sentence at the lowest end of the applicable guideline range, and to move for the dismissal of count two at sentencing. (D.E. 35 at ¶ 2).

The plea agreement included a voluntary waiver of Flores' right to appeal and to file a § 2255 motion:

> Defendant is aware that Title 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal the sentence imposed or the manner in which it was determined. The defendant may appeal <u>only</u> (a) the sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines, which had not been requested by the United States as set forth in Title 18 U.S.C. § 3742(b). Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

(D.E. 35 at ¶ 7) (emphasis in original). The agreement was signed by both Flores and his counsel.

3

At Flores' rearraignment, the Court questioned Flores under oath to ensure that his plea was voluntary and knowing and to ensure that he understood and was voluntarily relinquishing his appeal rights and right to file a § 2255 motion:

> **THE COURT:** And you each have a written plea agreement, wherein you give up two other rights that are independent of each other and only belong to you, and only you can give them up. One is the right to appeal, unless I give you a sentence that is higher than the statutory maximum, which for you, Mr. Riojas, would be in excess of 40 years, or for Mr. Flores, in excess of five years .... The other instance in which you can appeal is if I give you a sentence that is higher than the advisory sentencing guidelines.
>
> You are also giving up a right that's independent of your right to appeal, to attempt to come in for a post-conviction remedy, wherein you could try to set aside your conviction and/or your sentence by challenging such matters as constitutionality, jurisdiction, or ineffective assistance of counsel. But if you go forward today you give up these rights forever. Do you understand that?
>
> \* \* \* \* \*
>
> **THE COURT**: Mr. Flores?
>
> **DEFENDANT:** Yes.

(D.E. 54, Rearraignment Transcript ("R. Tr.") at 13-14).

Additionally, the written plea agreement was summarized by the AUSA, and his summary included a statement regarding the waiver: "As the Court has already stated, the Defendants waive their right to appeal, as well as their rights under 2255." (R. Tr. at 15). Flores testified that the summarized agreement was his plea agreement, that he understood it, that it was the entire agreement, and that there were not any other promises or agreements made to him that were not contained in the written agreement, including any promises of leniency or that he would receive a motion for downward departure or safety valve relief. (R. Tr. at 15-16). It is clear from the foregoing that Flores' waiver of § 2255 rights was knowing and voluntary. See Fed. R. Crim. P. 11(b)(1)(N)

4

(obligating court to ensure defendant understands any waiver of § 2255 rights and appellate rights prior to accepting his plea).

The Court ordered the U.S. Probation Office to prepare a Presentence Investigation Report ("PSR") and sentencing occurred on May 18, 2005. (D.E. 43). The PSR calculated the total offense level to be a 19. Coupled with Flores' criminal history category of I, the guideline range for a term of imprisonment was 30 to 37 months. (D.E. 55, Sentencing Transcript ("S. Tr.") at 47-48).

The Court sentenced Flores to 37 months in the custody of the Bureau of Prisons, to be followed by a three-year supervised release term, and imposed a special assessment of $100.00. (D.E. 43, 44). Judgment of conviction and sentence was entered May 23, 2005. (D.E. 44). Consistent with his waiver of appellate rights, Flores did not appeal. Flores' timely § 2255 motion was received by the Clerk on July 18, 2005.

### III. MOVANT'S ALLEGATIONS

In his motion, Flores asserts a number of different claims. First, he claims that the Court erred in sentencing him under the guidelines, relying on United States v. Booker, 125 S. Ct. 738 (2005). Second, he claims that the introduction of evidence at sentencing by the Probation Officer was erroneous. Specifically, he argues that the PSR enhanced his offense level as a result of "serious bodily injury," but that the only evidence of such bodily injury was based on the "hearsay" testimony of the probation officer, rather than actual medical records.

Third, he claims that his retained counsel was constitutionally deficient and ineffective at both his rearraignment and his sentencing. As to errors allegedly made by his counsel relating to his decision to plead guilty, Flores claims that his counsel failed to give him a copy of the plea agreement and to discuss the risks and consequences of the plea agreement. Flores' claim of ineffective assistance at sentencing is based on two alleged errors of counsel: (1) failing to object to the PSR and

5

failing to file a sentencing memorandum; and (2) and failing to challenge the government's alleged breach of the plea agreement.

In the conclusion of his supporting memorandum, he also asserts two additional challenges to his plea agreement. First, he makes the general claim that he was "coerced to sign the Plea Agreement by his legal counsel and by [the] Government." (D.E. 47, Supp. Mem. at 4). Second, he claims that the government breached the agreement when it did not recommend a sentence at the lowest end of the applicable guideline range during sentencing.

The government has moved for summary judgment against Flores' motion in its entirety on the grounds that it is barred by his waiver of § 2255 rights. In the alternative, the government contends that his motion is subject to dismissal because the record in the case conclusively shows that no relief is appropriate as to his underlying allegations.

For the reasons set forth herein, Flores' claims fail.

## IV.  DISCUSSION

**A.    28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

The Court need not address whether Flores has procedurally defaulted his claims by failing to appeal. Rather, the Court concludes that he validly waived all of the claims unrelated to his plea, including his Booker claim, and thus it does not reach the merits of those claims. See infra Section IV.C.; United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights); United States v. McKinney, 406 F.3d 744 (5th Cir. 2005) (enforcing a waiver of appeal rights that was signed prior to the issuance of Booker). Likewise, his claim of ineffective assistance at sentencing falls within the scope of his waiver and is barred.

His claims challenging his plea agreement, however, including his claim that he received ineffective assistance of counsel when entering into the plea agreement, fall outside the scope of his § 2255 waiver, because they are direct challenges to the validity of the plea and, thus, the waiver. See, e.g., United States v. White, 307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself"); cf. United States v. Branam, 231 F.3d 931, 931 n.1 (5th Cir. 2000) (considering defendant's argument that United States breached the plea agreement, despite an appeal-waiver provision in the plea agreement). Thus, the Court turns first to these claims.

**B.     Claims Challenging Plea Or Waiver**

   **1.     Alleged Ineffective Assistance of Counsel As to Plea**

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an

unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994), cert. denied, 514 U.S. 1071 (1995) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

Flores argues that his attorney was deficient for failing to provide him with a copy of the plea agreement and to discuss the consequences of the plea agreement with him. In his reply, he elaborates that his counsel did not explain he was waiving his right to appeal.[4] He also claims that he did not understand the waiver or plea proceedings because they were in English.[5] (D.E. 60 at 3-4). When viewing the record as a whole, it is clear that Flores is not entitled to relief on this claim, because he cannot show prejudice.

In order to show prejudice arising from an attorney's ineffective assistance during the plea negotiations or the plea itself, Flores must show that, absence his counsel's deficiencies, he would have proceeded to trial. See United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000) (in order to show prejudice as a result of ineffective assistance during the guilty plea process, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial") (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). This is a showing that cannot be met here. The rearraignment transcript clearly establishes that Flores' decision to plead guilty was his own and that it was entirely voluntary. His sworn assertions

---

[4] He does not dispute, however, that the Court explained the waiver of appellate rights and that he testified he understood it. Moreover, he testified that he understood the written plea agreement. (R. Tr. at 15-16).

[5] There was a court interpreter present during the proceedings. Moreover, Flores testified at the rearraignment that he understood "everything" being said. (R. Tr. at 21).

8

under oath preclude the relief he seeks here.

At his rearraignment, Flores testified that he had had enough time to talk with his attorney, that his attorney had answered all his questions, that he made time to see him in jail and take his phone calls, and that he was satisfied with the advice and efforts of his attorney. (R. Tr. at 8). The AUSA summarized the counts of the indictment that Flores intended to plead guilty to, and Flores expressed that he understood the government would have to prove each of those elements in order to convict him. (R. Tr. at 10-11). The Court informed Flores of the various trial rights available to him, and he testified that he understood that if he pleaded guilty, he would be giving up those trial rights. (R. Tr. at 11-13).

Consistent with Rule 11, Fed. R. Crim P., the Court explained to Flores the maximum punishment that he might receive. Specifically, the Court informed him that he could be sentenced to a maximum of five years in prison and a maximum fine of $ 250,000. The Court also informed him that there was a mandatory $100 special assessment, and a maximum supervised release term of three years. (R. Tr. at 17-18). Flores testified that he understood. (R. Tr. at 18).

Flores testified that no one had forced him to plead guilty, that no one had promised him leniency for pleading guilty, that he understood that if his sentence was more severe than he expected, he would still be bound by his plea, and that his decision to plead guilty was entirely voluntary. (R. Tr. at 15-17, 21).

The transcript also establishes that Flores understood that, no matter what the government recommended, it would not be binding on the Court :

> **THE COURT:** Do you understand that I'm not a party to this agreement, it's not binding on me in any way, and you won't know whether I'll accept any part of it till time of sentencing when it's too late for you to have any right to withdraw you plea? In fact, as soon as you enter your plea, it's too late for you to have any right to withdraw

9

>       it, even if the sentence is more severe than you expected. I want to
>       make sure you understand that.
>           Plus, you have in your plea agreement a provision for
>       substantial assistance. If you choose to take advantage of it, and if in
>       your opinion you truthfully and substantially cooperate, and the U.S.
>       Attorney disagrees with you and does not file a motion for downward
>       departure, there's nothing you can do about that. On the other hand, if
>       the U.S. Attorney does file a motion for downward departure, it's
>       solely up to me, with some limitations, as to whether or not it would
>       be granted. Do you understand these matters?
>                             * * * * *
>   **THE COURT:** Mr. Flores?
>
>   **THE DEFENDANT:** Yes, Your Honor.

(R. Tr. at 16-17).

Flores' sworn statements in open court are entitled to a strong presumption of truthfulness. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002). Put simply, Flores' sworn statements preclude the relief he seeks here. He knew of the potential punishment he faced, he knew the recommendations of the government were not binding on the Court, and his plea was knowing. Moreover, he testified that his decision to plead guilty was voluntary and that no one had forced him to plead guilty. He further testified that he understood both that he was waiving his right to appeal and his right to file any § 2255 motion. Any claim that his counsel failed to properly advise him in the plea process or that counsel was deficient for advising him to plead guilty fails. His own testimony shows that he understood the rights he was giving up by pleading guilty and that he was doing so voluntarily.

In short, it is clear that Flores cannot show that he would have insisted on going to trial but for counsel's performance, despite any bare allegations now to the contrary. Thus, Flores cannot prove

the prejudice prong of the Strickland inquiry, and it is unnecessary to determine whether his counsel's performance was deficient. His claim of ineffective assistance in the plea process fails.

### 2.      Alleged Coercion By Government and Counsel to Sign Agreement

Flores also claims that he was coerced into signing the plea agreement by both the government and his counsel. He provides no facts in support of this blanket allegation, and his claim fails for this reason alone. See United States v. Pineda, 988 F.2d 22, 23 (5th Cir. 1993) (conclusory allegations on a critical question do not raise a constitutional issue). Moreover, any belated claim of coercion is flatly contradicted by his testimony at the rearraignment discussed above. (R. Tr. at 21 (Flores' testimony that no one had forced him to plead guilty, but that his decision to do so was entirely voluntary)). Accordingly, this claim fails.

### 3.      Alleged Breach of Plea Agreement By Government[6]

Flores' contention that the government breached the plea agreement is similarly flawed. Indeed, his claim relies on incorrect facts.

Flores' plea agreement obligated the government to recommend the lowest end of the applicable guideline range at sentencing. (D.E. 35 at ¶ 2). At sentencing, the guideline range was determined to be 30 to 37 months, and the government recommended a sentence of 30 months. (S. Tr. at 47-48). The Court elected to sentence him at the high end of that guideline range, but the government upheld the plea agreement in making the recommendation of 30 months. Thus, his claim that the government breached the plea agreement is flatly contradicted by the record.

---

[6] As with many of Flores' claims, a direct claim of a breach of the plea agreement by the government should have been brought on direct appeal, and is likely procedurally barred from consideration here. See United States v. Lopez, 248 F.3d 427, 433 (5th Cir. 2001) (where a defendant fails to raise an issue in his criminal proceedings, that issue is procedurally barred from consideration in § 2255 proceedings). Nonetheless, the Court addresses the claim on its merits.

11

Because the Court concludes that Flores' challenges to the validity of the plea agreement fail, his plea agreement, and his waiver of § 2255 rights contained therein, is valid and enforceable. Accordingly, the Court turns to the effect of his waiver of § 2255 rights on his remaining claims.

**C.    Waiver of § 2255 Rights**

It is clear from the rearraignment that Flores understood that he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motions, all that is required for his waiver to be enforceable. (R. Tr. at 13-14). See Wilkes, 20 F.3d at 653 (waiver is knowing if defendant understood he had a right, and understood he was giving it up). Again, Flores' statements under oath are entitled to a strong presumption of truthfulness. Wilkes, 20 F.3d at 653; Cothran, 302 F.3d at 283-84. Those statements support the Court's conclusion that his wavier was knowing and voluntary. Flores' remaining claims clearly fall within the scope of that waiver.

Thus, while the claims that challenge the validity of his plea and his plea agreement are denied on their merits, Flores' remaining claims fall within the scope of his waiver. Therefore, they are not properly before the Court. See generally Wilkes, supra; White, supra; McKinney, supra. For these reasons, Flores' § 2255 motion is DENIED in its entirety.

**D.    Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Flores has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and

12

argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Flores is not entitled to a COA as to any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims challenging the plea agreement, including the ineffective assistance claim as to his plea. Similarly, jurists of reason would not find it debatable that his valid and knowing waiver precludes consideration of the remainder of his claims.

## V.  CONCLUSION

For the above-stated reasons, Flores' motion under 28 U.S.C. § 2255 (D.E. 47) is DISMISSED WITH PREJUDICE.  The Court also DENIES Flores a Certificate of Appealability.

ORDERED this 24th day of February, 2006.

_____
Janis Graham Jack
United States District Judge